UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION -- LEXINGTON

| | |
|---|---|
| RICHMOND HEALTH FACILITIES—<br>MADISON, L.P., d/b/a MADISON<br>HEALTH & REHABILITATION CENTER,<br>et al.,<br><br>Petitioners,<br><br>v.<br><br>TAMRA SHEARER, AS<br>ADMINISTRATRIX OF THE ESTATE<br>OF BETTY REED, DECEASED,<br><br>Respondent. | CIVIL ACTION<br>NO. 5:17-255-KKC<br><br><br>OPINION AND ORDER |

We have been here before. The facts are familiar: Tamra Shearer, as Administratrix of the Estate of Betty Reed and emergency guardian, signed an arbitration agreement with Madison Health & Rehabilitation Center when Reed was admitted there.[1] After Reed's death, Shearer, on behalf of Reed, sued Madison Health—in state court—alleging various claims against Madison Health related to the care Reed received at the nursing facility. (DE 1-1). The claim is familiar: Madison Health wants to enforce the arbitration agreement under the Kentucky Uniform Arbitration Act, KRS § 417.045 *et seq.* and the Federal Arbitration Act, 9 U.S.C. § 2 (FAA), so it filed a motion to compel arbitration in this Court (DE 1, 3). Also familiar is the response: Shearer wants out of the agreement and moves to dismiss Madison Health's action on several grounds: lack of subject-matter jurisdiction, failure to join indispensable parties, *Colorado River* abstention, and failure to state a claim (DE 9, 10). Given that virtually every federal district court in Kentucky, in some form or fashion, has considered all of the

---

[1] The petitioners include Richmond Health Facilities–Madison, L.P. d/b/a Madison Health & Rehabilitation Center; Richmond Health Facilities–Madison, GP, LLC; Preferred Care of Delaware, Inc., d/b/a Preferred Care, Inc.; Preferred Care Partners Management Group, L.P.; PCPMG, LLC; and Kentucky Partners Management, LLC. For simplicity's sake, they will be referred to collectively as "Madison Health."

1

arguments offered by both parties, the result too should be expected: Only Shearer's wrongful death claims will be allowed to proceed in state court. The remainder of her motion to dismiss will be denied. Madison Health's motion to compel arbitration will be enforced in part, and the concurrent state proceedings will be enjoined as the claims that must be arbitrated.

I.

Beginning on May 6, 2016, and lasting until March 24, 2017, Betty Reed was a resident of Madison Health, a nursing home facility in Madison County, Kentucky. Shearer, Reed's daughter, was appointed Reed's emergency guardian at the time Reed entered Madison Health by an "Emergency Guardian Order" entered by the Estill District Court two days earlier on May 4, 2016 (DE 1-3, May 4, 2016, Court Order). Reed was of unsound mind before she entered Madison Health. Shearer, as Administratrix of the Estate of Betty and emergency guardian, signed an "Alternative Dispute Resolution Agreement" on May 6, 2016. (DE 1-2). The arbitration agreement stated that "[a]ny and all disputes arising out of or in any way relating to" Reed's stay at Madison Health would be resolved by arbitration. (DE 1-2, at 41, § 5). Though the arbitration agreement contained a revocation clause allowing Shearer to back out of the agreement "by providing notice . . . within thirty (30) days of signing it," (DE 1-2, at 43, § 13), the arbitration agreement was never revoked.

According to Shearer, Reed's stay at Madison Health was anything but good, and Shearer believes that Madison Health was the cause. On May 22, 2017, she filed suit against Madison Health in Madison County Circuit Court alleging claims of negligence, medical negligence, corporate negligence, a violation of long-term care rights, and wrongful death. (DE 1-1). In response, Madison Health sued Shearer in this Court. Madison Health alleged that Shearer violated the arbitration agreement when she filed her state court suit and seeks to compel the parties into arbitration and enjoin Shearer's state court proceeding. Shearer filed a motion to dismiss. The claims are now ripe for review.

II.

This discussion begins with some context. Nothing about this case is novel. Shearer is not the first guardian of a nursing home resident who, after signing an arbitration agreement, decided to take her case to the courts instead of to an arbitrator. Nor is she the first to move to dismiss an action to compel arbitration using the arguments she puts forth here. Without doubt, Shearer's motion looks up at mountain of precedent that has uniformly considered and rejected, in one way or another, the main thrust of her claims. *See GGNSC Louisville Mt. Holly, LLC v. Turner*, No. 3:16-CV-00149-TBR, 2017 WL 537200, at *3 (W.D. Ky. Feb. 9, 2017) (listing cases by eleven out of thirteen federal who have addressed and rejected similar arguments). There is no reason to depart from what is well-settled. Accordingly, a walkthrough analysis will suffice to address these claims.

A.

In her motion to dismiss, Shearer attacks this Court's subject-matter jurisdiction to adjudicate this case. The Court therefore must address those arguments first. *See Douglas v. E.G. Baldwin & Associates*, 150 F.3d 604, 607 (6th Cir. 1998) ("The first and fundamental question presented by every case brought to the federal court is whether it has jurisdiction to hear the case.").

*12(b)(1) Subject-Matter Jurisdiction*

The FAA is "something of an anomaly" in that it "'bestow[s] no federal jurisdiction but rather require[s] an independent jurisdictional basis' [for access to a federal forum] over the parties' dispute." *Vaden v. Discover Bank*, 556 U.S. 49, 56 (2009) (quoting *Hall Street Assoc., LLC v. Mattel, Inc.*, 552 U.S. 576, 581–82 (2008)). Thus, a petitioner proceeding under § 4 must assert an independent source of subject matter jurisdiction. Here, Madison Health has alleged that the amount in controversy exceeds $75,000 exclusive of interest and costs and that complete diversity exists between Madison Health, who are all citizens of Texas, and Shearer, who is a citizen of Kentucky. This is enough to establish diversity jurisdiction under 28 U.S.C. § 1332.

Shearer argues that this finding is not so simple because Thomas Tackett, a citizen of Kentucky, is a named party defendant in the state court action. Unlike the state court action, Tackett is not included in the federal claim. She alleges that "the corporate defendants strategically plucked themselves out" of the state court so as to manufacture diversity jurisdiction in federal court. (DE 9-1, at 4). Shearer asks this Court to apply *Vaden* to "look through" the underlying controversy, the state court action, and take the citizenship of Tackett into account when evaluating subject-matter jurisdiction. Courts have found, however, that *Vaden* does not apply to cases involving diversity jurisdiction. Indeed, Shearer's arguments to the contrary have been roundly rejected by multiple other courts within this District alone. *See e.g., GGNSC Frankfort, LLC, et al. v. Moore*, 3:17-45-GFVT, 2017 WL 2805147, at *2 (E.D. Ky. June 28, 2017); *Brookdale Sr. Living Inc. v. Walker*, No. 5:15-206-KKC, 2016 WL 1255722, *2-*3 (E.D. Ky. Mar. 29, 2016) (collecting cases). Accordingly, this Court will not apply *Vaden*. Jurisdiction in this case is based on diversity.

*12(b)(7) Failure to Join Indispensable Parties*

But, Shearer argues, notwithstanding *Vaden*, things are not as they seem. Even if the Court will not "look through" the complaint, Shearer protests that Tackett, a non-corporate entity, is "in fact a necessary and indispensable party to the § 4 petition," which requires the petition to be dismissed under Federal Rule of Civil Procedure 19(a) because Tackett's inclusion would destroy complete diversity. (DE 9-1, at 4).

There is just one problem with this argument. Nursing home administrators, like Tackett, are not indispensable parties in this action because joint tortfeasors—of which Tackett is alleged to be in the state court action—are permissive, not indispensable parties in actions to compel arbitration. *See e.g., PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206 (6th Cir. 2001) (holding that a company seeking to compel arbitration need not join any of its own employees, even though plaintiff joined them in state court); *Preferred Care, Inc. v. Howell*, 187 F. Supp.3d

4

796, 804 (E.D. Ky. 2016) (applying *PaineWebber* to identical argument). As *PaineWebber* explained, "[a]ny ruling to the contrary would virtually eliminate the availability of federal courts to enforce arbitration clauses in diversity cases by the simple expedient of one of the parties filing a preemptive suit in state court with at least one non-diverse defendant." 276 F.3d at 205. Thus, Tackett need not be named here, as Madison Health's exclusion of a non-diverse nursing administrator does not destroy the Court's diversity jurisdiction.

<u>*Colorado River* Abstention</u>

Shearer contends that even if this Court has subject-matter jurisdiction, it should abstain from hearing the merits on the basis that there is a parallel suit pending in state court. "In certain 'exceptional' circumstances, [] a federal district court may abstain from exercising its subject matter jurisdiction due to the existence of a concurrent state court proceeding, based on 'considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *PaineWebber*, 276 F.3d at 206 (quoting *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976)). But "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule," and this "extraordinary and narrow exception" is only justified when it "would clearly serve an important countervailing interest." *Colorado River*, 424 U.S. at 813.

There is a two-step process for determining whether abstention is appropriate under *Colorado River*. The Court must first decide whether the federal and state suits are similar enough to be parallel. *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998). It is not necessary that the proceedings be identical, nor is it necessary that the parties be identical. *Id*. Instead, as long as the claims raised "are predicated on the same allegations as to the same material facts" and the parties are "substantially similar," the dual actions are similar enough to qualify as parallel under *Colorado River*. *Id.* at 340.

5

The parties are parallel in this case. Save for one nursing administrator, the parties overlap in the federal and state court action, and both cases turn on the same ultimate legal question—whether the arbitration agreement is enforceable and requires that Shearer arbitrate her claims brought against Madison Health. Accordingly, the two actions are similar enough to satisfy the threshold requirement under *Colorado River* that they be parallel.

To determine whether this case fits under the exceptional circumstances counseling in favor of abstention, the Court considers a list of factors. The factors are:

(1) whether the state court has assumed jurisdiction over any res or property;

(2) whether the federal forum is less convenient to the parties;

(3) whether the two cases would cause piecemeal litigation;

(4) the order in which the state and federal courts obtained jurisdiction;

(5) whether the source of governing law is state or federal;

(6) whether the state court will adequately protect the federal plaintiff's rights;

(7) how far the state and federal cases have proceeded; and

(8) whether or not the courts have concurrent jurisdiction over the issues.

*Romine*, 160 F.3d at 340–41. These factors are not meant to be a "mechanical checklist." *Id.* at 341. Rather, the Court should balance all of them to decide whether *Colorado River* abstention is appropriate with the scale initially tilting in favor of exercising jurisdiction. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15–16 (1983).

Shearer does nothing to articulate why *Colorado River* abstention requires the Court to abstain from exercising its jurisdiction. This complete lack of argumentation alone waives her contention. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."). Moreover, other courts have

thoughtfully considered these factors in this same context, concluding, almost uniformly, that they weigh heavily against abstention. *Walker*, 2016 WL 1255722, at *6 (collecting cases); *But see Preferred Care of Delaware, Inc. v. Vanarsdale*, 152 F. Supp. 3d 929 (E.D. Ky. 2016), *affirmed*, No. 16-5209 (6th Cir. Feb. 26, 2016) (abstaining under *Colorado River* in a narrow instance when state court had already disposed of issue central to both state and federal action, the state court decision was under consideration by state intermediate court where both courts had jurisdiction over question of arbitrability).

A quick run-through of the factors too shows that this case is not one of "extraordinary and narrow" exceptions to the general rule. *Colorado River*, 424 U.S. at 813. While the state court can adequately protect Madison Health's rights (factor six), particularly because the FAA is binding on state courts, *PaineWebber*, 276 F.3d at 208; *see also Kindred Nursing Centers L.P. v. Clark*, ––– U.S. –––, 137 S. Ct. 1421 (2017) (clarifying how Kentucky state courts should interpret the FAA) and while federal courts are more likely to abstain under *Colorado River* where concurrent jurisdiction exists (factor eight)—which both weigh slightly in favor of abstention—the remaining six factors counsel against abstention, particularly because there is no legitimate concern for piecemeal litigation in this case (factor three), *see Preferred Care of Delaware, Inc. v. VanArsdale*, 676 F. App'x 388 (6th Cir. Jan 13, 2017), and federal law (the FAA) will, at least just as much as and if not more than state law, dictate whether the parties must proceed to arbitration (factor five). *See PaineWebber*, 276 F.3d at 208–09 ("[T]he presence of federal law issues must always be a major consideration weighing against surrender of federal jurisdiction in deference to state proceedings."). Property is not at issue (factor one). There is no indication that this Court is not just as convenient for the parties as the state court (factor two). Moreover, this Court obtained jurisdiction over the arbitration issue first (factor four), and the state court proceedings has not outpaced the federal proceedings by any meaningful margin (factor seven).

7

Overall, it is clear that only the sixth and eighth factors support abstention. All of the other factors favor federal jurisdiction to varying degrees of weight. This Court therefore will exercise its jurisdiction over this case.

B.

With this threshold jurisdictional challenges settled, the Court now turns to the arbitration agreement itself. Madison Health moves this Court to compel Shearer to submit all of her claims currently pending in state court to arbitration and to enjoin her from pursuing her state court claims. The Court must compel arbitration pursuant to the FAA when there is a valid, written arbitration agreement between the parties. 9 U.S.C. § 2; *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218-19 (1985) (explaining that the FAA requires courts to enforce valid arbitration agreements). Shearer believes that the arbitration agreement in this case is invalid and moves the Court to not only refuse to enforce the arbitration agreement, but to dismiss it outright (DE 9). She offers four reasons why this arbitration agreement is, in full or in part, invalid and unenforceable and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Each will be addressed in turn.

*The Arbitration Agreement is Enforceable under the FAA*

The FAA applies to written agreements to arbitrate disputes that arise out of contracts involving transactions in interstate commerce. 9 U.S.C. § 2. Shearer argues that the arbitration agreement in this case "plainly fails to meet the standards for enforcement under the FAA" because the agreement it is not a contract evidencing a transaction involving commerce. (DE 9-1, at 7). Like her jurisdictional arguments, this objection to the validity of the arbitration agreement carries no merit. The short of it is this: the FAA "indisputably applies to arbitration agreements executed in connection with nursing home admission." *Moore*, 2017 WL 2805147, at *3 (collecting cases). The term "involving commerce" is the "functional equivalent" of "affecting commerce"— which is the "broadest permissible exercise of Congress' Commerce Clause power," *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (quoting *Allied-Bruce Terminix Cos.*, 513 U.S. 265, 273-74 (2003)) and "[b]ecause the arbitration agreement evidences a transaction involving interstate commerce—the provision of healthcare—it is governed by the FAA." *GGNSC Stanford, LLC v. Johnson*, No. 5:16-12-KKC, 2016 WL 4595212, at *6 (E.D. Ky. Sept 2, 2016); *see also Preferred Care of Delaware, Inc. v. Crocker*, 173 F. Supp. 3d 505, 514 (W.D. Ky. 2016) ("Many cases have found that the FAA applies to arbitration agreements involving nursing home residents," with these cases recognizing "that it would be impracticable for the nursing home to procure all goods necessary for the daily operations purely through intrastate channels.") (citations omitted)).

*The Arbitration Agreement was Executed with Sufficient Authority*

Shearer also argues that the Order of Guardianship designating her as Reed's guardian "encompasses insufficient authority for the execution of the Arbitration Agreement in question." (DE 9-1, at 7). Specifically, Shearer states that because the Order of Guardianship did not expressly empower her to waive trial rights and other rights attendant affected by an arbitration agreement or Kentucky guardianship law, she had no power to sign away any of

9

Reed's rights. *Id*. But Kentucky law (and every federal court addressing the issues) provides otherwise.

As explained by another district court:

> Guardians have broad powers to ensure a ward's "care, comfort, and maintenance" and to "enable the ward to receive medical or other professional care." KRS § 387.660(2)–(3). Further, guardians are tasked with protecting and effecting the ward's "personal, civil, and human rights." *Id*. § 387.640. And when a guardian is appointed, the ward is stripped of several rights, including "the right ... to enter into contractual relationships." KRS § 387.590(10). So it follows that these rights, once taken from the ward, are vested in the guardian to care for him. Guardians then retain that power unless a court says otherwise. *See* KRS § 387.660.

*Preferred Care, Inc. v. Bleeker*, No. 16-152-ART, 2016 WL 6636854, at *4 (E.D. Ky. Nov. 8, 2016). So, just as Shearer argues, "Kentucky law provides that guardians . . . must express the powers of the guardian." (DE 9-1, at 8). The arbitration agreement at issue, though, contains no limitations. KRS § 387.660. Thus, Shearer, as a guardian without limit from the court order, had the authority to execute the arbitration agreement.[2]

*The Arbitration Agreement is Not Unconscionable*

Shearer also passingly argues that the arbitration agreement is unenforceable because it is both procedurally and substantively unconscionable. (DE 9-1, at 11). She complains that, as part of a "healthcare conglomerate," Madison Health produced the arbitration agreement as part of "a mass-produced, boiler-plate, pre-printed document [] presented . . . within a lengthy stack of admissions paperwork." (DE 9-1, at 11).

"Procedural unconscionability pertains to the process by which an agreement is reached and the form of the agreement, including the use therein of fine print and convoluted or unclear language," and "involves, for example, material, risk-shifting contractual terms which are not typically expected by the party who is being asked to assent to them and often appear [] in the

---

[2] Though it is somewhat hard to track, Shearer also seems to suggest that *Kindred Healthcare, Inc. v. Clark*, 137 S. Ct. 1421 (2017), applies here. But *Clark* concerns attorneys-in-fact. A guardian receives his power from the state— not from the ward himself. Thus, whatever applicability *Clark* may have, it has no force on the above analysis.

boilerplate of a printed form." *Howell*, 187 F.Supp.3d at 810 (quoting *Conseco Fin. Serv. Corp. v. Wilder*, 47 S.W.3d 335, 342 n. 22 (Ky. Ct. App. 2001) (internal citations and quotations omitted)). A substantively unconscionable agreement is "one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other." *Id.* (quoting *Wilder*, 47 S.W.3d at 341).

The arbitration agreement in this case is neither procedurally or substantively unconscionable. And Shearer's arguments to the contrary are themselves of the generic sort that have been rejected time and time again by numerous federal courts in this District. *See e.g.*, *Howell*, 187 F. Supp.3d at 810; *Bleeker*, 2016 WL 663654, at *4-*5. Simply stated, Madison Health engaged in nothing close to the skullduggery required to make the arbitration agreement procedurally unconscionable. There is nothing buried in the pages of the contract. The arbitration agreement had a clearly visible title, was a standalone document, and it included bolded, capital letters indicating what legal effect signing the arbitration would have. (DE 1-2, at 1, Arbitration Agreement). Nor was the arbitration agreement substantively unconscionable. It may have been a part of a larger set of documents, but there is nothing "one-sided" to an agreement that applies and constrains both sides (to go arbitrate) equally. Just because Shearer regrets signing the document and dislikes its effect now does not make it unconscionable.

III.

Because all of Shearer's enforceability arguments fail, the next step is for the Court to compel her to arbitrate all of her claims. (DE 11, at 32). But before compelling arbitration, there is one more layer of analysis left to conduct. A court must first determine whether: (1) the parties have agreed to arbitrate, and (2) whether their agreement covers all the claims at issue. *See Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). The discussion above makes clear that Madison Health and Shearer agreed to enter a binding arbitration agreement. But, does the

11

agreement cover *all* of the claims at issue here? Madison Health argues that it does. The Court must resolve any doubt in favor of arbitration. *See Fazio v. Lehman Bros, Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). The state court complaints alleges negligence, medical negligence, corporate negligence, a violation of long-term care rights, and wrongful death. (DE 1-1). Madison Health argues that "the Agreement, by its very language, plainly encompasses all of Respondent's claims in the State Court Action." (DE 3-1, n. 5; *see also* DE 11, at 32). The arbitration agreement itself shows that Madison Health's position may be a bit overstated. It covers the following legal disputes:

> This Agreement applies to any and all disputes arising out of or in any way relating to this Agreement or to the Resident's stay at the Facility that would constitute a legally cognizable cause of action in a court of law sitting in the Commonwealth of Kentucky and shall include, but not be limited to, all claims in law or equity arising from one Party's failure to satisfy a financial obligation to the other Party; a violation of a right claimed to exist under federal, state, or local law or contractual agreement between the Parties; tort; breach of contract; fraud; misrepresentation; negligence; gross negligence; malpractice; death or wrongful death and any alleged departure from any applicable federal state, or local medical, health care, consumer, or safety standards.

(DE 1-2, at 3, Arbitration Agreement). The plain language of the arbitration agreement encompasses all of the claims brought on behalf of Reed herself. However, not all of the claims encompassed in the agreement are subject to arbitration. That means the wrongful-death claim.

Under Kentucky law, a decedent or representative of a decedent has no authority to bind a wrongful death beneficiary to an arbitration agreement. *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 597–99 (Ky. 2012); *Preferred Care, Inc. v. Roberts*, No. 5:16-203-KKC, 2017 WL 424868, at *6 (E.D. Ky. Jan 31, 2017) (applying *Ping*); *Howell*, 187 F. Supp.3d at 808 (same). "Whenever the death of a person results from an injury inflicted by the negligence or wrongful act of another" a representative of the decedent can bring a claim for damages against the person or agent who caused the death. Ky. Rev. Stat. § 411.130(1). "[T]he wrongful death claim is not derived through or on behalf of the [nursing home resident] but accrues separately to the

12

wrongful death beneficiaries and is meant to compensate them for their own pecuniary loss." *Ping*, 376 S.W.3d at 599. The only parties to arbitration agreement were Madison Health and Reed, through Shearer who signed on her behalf. Shearer did not sign the arbitration agreement on behalf of Reed's future estate. The wrongful death beneficiaries then were not parties to the arbitration agreement and their claims are not subject to an order compelling arbitration. *Id.* at 598–99.

Madison Health contends that the Court here relies on *Ping*'s dicta and that *Ping* is nevertheless preempted by the FAA. (DE 11, at 32). But that argument has been made before and has been rejected by the Sixth Circuit. *See Richmond Health Facilities v. Nichols*, 811 F.3d 192 (6th Cir. 2016). Nevertheless, Madison Health insists that *Nichols* "misconstrued and misapplied *Ping*, mischaracterized the nature and mechanics of wrongful-death claims under Kentucky law, failed to view *Ping* through the prism of the FAA as required by the Supremacy Clause, and failed to appreciate the circumspect manner in which *Ping* . . . singles out arbitration relative to the 'rights' of wrongful death beneficiaries under Kentucky law." (DE 11, at 35). For this Court to follow *Nichols*, Madison Health stresses, "would be for it to adopt the same flawed reasoning . . . ." (DE 11, at 35). Even if the Court were to disagree with the reasoning in *Nichols* (which it does not), it could not jut decide to ignore binding Sixth Circuit precedent, particularly when the only argument against *Nichols* Madison Health makes is that the Sixth Circuit's decision is wrong.[3]

Therefore, all the state court claims save the wrongful death claim must be arbitrated and the Court will order that they are. Thus, the Court must dismiss Madison Health's petition insofar as it seeks to compel arbitration of David's wrongful-death claim.

IV.

---

[3] The Court recognizes that another court in this District has held the opposite. *See Golden Gate National Senior Care, LLC v. Jones*, No. 16-49-HRW, 2016 WL 4733151 (E.D. Ky. Sept. 12, 2016). But that case did not consider the import of *Nichols*, which was decided months earlier. As such, the Court respectfully disagrees with its analysis.

Lastly, the Court turns to a motion from Madison Health, which Shearer moves to dismiss (DE 9-1, at 11) Having found that Shearer must submit all but one of her claims to arbitration, the question remains whether this Court should enjoin her from pursuing her parallel action in state court. Madison Health asks the Court to do so. (DE 1). "Although the FAA requires courts to stay their own proceedings where the issues to be litigated are subject to an agreement to arbitrate, it does not specifically authorize federal courts to stay proceedings pending in state courts." *Great Earth Companies, Inv. v. Simmons*, 288 F.3d 878, 893 (6th Cir. 2002) (internal citations omitted). For this reason, "the District Court's authority to enjoin state-court proceedings is subject to the legal and equitable standards for injunctions generally, including the Anti Injunction Act." *Id*. Under the Anti-Injunction Act, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. An injunction in this case "properly falls within the exception for injunctions 'necessary to protect or effectuate [this Court's] judgments.' " *Great Earth*, 288 F.3d at 894. Shearer is enjoined from litigating her claims that are covered by the arbitration agreement in Madison County Circuit Court. Shearer's motion to the contrary will be dismissed.

V.

In the final analysis, a valid and binding arbitration agreement was executed by Madison Health and Shearer on behalf of Reed. The Court will enforce the arbitration agreement and enjoin the state court proceedings consistent with the findings made above. The arbitration agreement is not enforceable against the wrongful-death beneficiaries, however, and Madison Health's petition to compel arbitration on that claim must be dismissed as far as it asks this Court to compel arbitration of the wrongful-death claims. Madison Health has stated a claim upon which relief can be granted on the remaining claims as to the claims encompassed in the

14

state court complaint. All of Shearer's arguments to the contrary on those claims fail as a matter of law, and her motion to dismiss must be denied.

Accordingly it is **ORDERED** that:

1. Respondent Tamra Shearer's motion to dismiss (DE 9) is **DENIED IN PART** and **GRANTED IN PART**. The motion to dismiss is **GRANTED** insofar as the wrongful death claim is not encompassed by the arbitration agreement. The motion to dismiss is **DENIED** in all other respects.

2. Petitioners Richmond Health Facilities–Madison, L.P. d/b/a Madison Health & Rehabilitation Center; Richmond Health Facilities–Madison, GP, LLC; Preferred Care of Delaware, Inc., d/b/a Preferred Care, Inc.; Preferred Care Partners Management Group, L.P.; PCPMG, LLC; and Kentucky Partners Management, LLC's motion to compel (DE 1, 3) is **GRANTED IN PART** and **DENIED IN PART**. The motion to compel is **DENIED** as to the wrongful death claim, but is **GRANTED** in all other respects.

3. Tamra Shearer, acting as Administratrix of the Estate of Betty Reed, is **ENJOINED** from pursing her Madison County Circuit Court action for all claims except for the wrongful death claim.

4. This matter is **STAYED** pending any further action to enforce the arbitrator's award.

Dated August 1, 2017.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY